**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **JERRY THOMAS COEN and CARLOS HERRERA,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CASE NO. 5:16-CV-00353-MTT** |
| **GEORGIA DEPARTMENT OF CORRECTIONS; *et al.*,** | ) ) ) | |
| **Defendants.** | ) | |

## ORDER

Pending before the Court are the Defendants' motion to dismiss Coen's first amended complaint, Doc. 14; Coen's *pro se* motion for leave to file a second amended complaint, Doc. 26; Coen's motion for leave to file a revised second amended complaint, Doc. 33; and Coen's motion to lift the stay of discovery, Doc. 44.   Upon consideration of the record, briefs, and procedural posture of this case, the Court **DENIES as MOOT** the Defendants' motion to dismiss Coen's first amended complaint and Coen's *pro se* motion for leave to file a second amended complaint (Doc. 14); **GRANTS in PART** and **DENIES in PART** Coen's motion for leave to file a revised second amended complaint (Doc. 33); **ORDERS** Plaintiff to file a recast second amended complaint that complies with this Order; and **GRANTS** Coen's motion to lift the stay of discovery (Doc. 44).

The Court concludes that Coen's motion for leave to file a revised second amended complaint is **GRANTED** to the extent he seeks  (1) to clarify his factual allegations relating to his claims for damages under Title II of the Americans with

Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"); (2) to withdraw any claims not alleged in the proposed revised second amended complaint, including any claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (3) to add Carlos Herrera as a Plaintiff and add Herrera's ADA and RA claims for damages only; and (4) to delete unnecessary Defendants named in the original and first amended complaint and add the Georgia Department of Corrections ("GDOC") and the Georgia Board of Pardons and Paroles ("GBOP") as the only named Defendants. Coen's motion for leave to amend the revised second amended complaint is **DENIED** to the extent he seeks: (1) to clarify his Fourteenth and Eighth Amendment claims; (2) to add or clarify his requests for injunctive and declaratory relief; (3) to add claims related to his (or any other Plaintiffs') post-incarceration probation or parole; (4) to add additional Plaintiffs other than Herrera; (5) to add any claims for Herrera other than those brought under the ADA and RA; and (6) to add any individual Defendants.

## I. BACKGROUND

Jerry Thomas Coen was incarcerated at Central State Prison ("CSP") in Macon, Georgia when he filed his original complaint against twelve Defendants on August 3, 2016. Doc. 1. Coen alleged he was "profoundly deaf" and his "native language" was American Sign Language ("ASL"). Doc. 1 at 5. He complained that the Defendants, through their practices and procedures, discriminated against him in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*; Section 504 of the RA, 29 U.S.C. § 794 *et seq.*; RLUIPA, 42 U.S.C. § 2000cc *et seq.*; and the United States Constitution. Doc. 1 at 5.

Coen stated he was unable to use the standard telephones available in Georgia's prison system to communicate and the teletypewriter or TTY telephone service for the

hearing-impaired was inaccessible, inoperable, and outdated. Doc. 1 at 5. As a result, Coen had no means to communicate with individuals outside of the prison, including family, friends, lawyers, and advocates for the deaf. Doc. 1 at 5, 8. He complained that the Defendants failed to provide him with access to auxiliary aids or services necessary to enable him to participate in educational, religious, rehabilitative, and other services available to similarly situated non-deaf inmates. Doc. 1 at 5-8. He stated there were no ASL interpreters present during disciplinary proceedings. Doc. 1 at 9. He was, therefore, denied the ability to meaningfully participate and defend himself during these proceedings. Doc. 1 at 9.

On January 6, 2017, Coen filed an amended complaint, in which he raised essentially the same claims, but added additional Defendants. Doc. 8.

On February 15, 2017, the United States Magistrate Judge ordered Coen's action could go forward against all named Defendants. Because Coen was not proceeding *in forma pauperis*, he was responsible for serving all of the Defendants. Doc. 9 at 6. The Clerk of Court was ordered to forward to Coen the documents needed for service. Doc. 9 at 6. The Court's CM-ECF record shows that the Clerk's office mailed a copy of the Fed. R. Civ. P. 4 package to Coen on February 16, 2017.

Coen was released from prison on February 18, 2017. Doc. 10. On July 17, 2017, the Court docketed a letter from Coen in which he stated that on July 12, 2017 he "mailed to each individual [D]efendant . . . via first-class mail a copy of the complaint and a request that they waive service . . . ." Doc. 12.

On September 8, 2017, Defendants Commissioner Homer Bryson, Warden Walter Berry, Deputy Warden John Fagan, Counselor Jones, Deputy Warden Mizell

Davis, Counselor Racheal Moncrief, Deputy Warden Michael Thomas, Unit Manager Sheneca King, Chief Counselor Juanita Thorpe, Lt. Basely, Lt. Childress, Lt. Phillip, and Captain Hall moved to dismiss Coen's first amended complaint and to stay discovery. Docs. 14; 15. On September 13, 2017, the Magistrate Judge ordered Coen to respond to the motion to dismiss and stayed discovery. Docs. 16; 17.

On April 17, 2018, Coen filed a "Request for Permission to File this Second Amended Complaint." Doc. 26. He stated that he "wish[ed] to clarify some factual allegations, add [D]efendants, and add relevant facts about [his] post-release situation as a Deaf suvpervisee." Doc. 26 at 1. Coen also stated that he was communicating with attorneys and hoped to retain counsel. Doc 26 at 1-2.

Counsel for Coen entered an appearance on June 7, 2018 and filed a motion for leave to file a revised second amended complaint along with an eighty-two page proposed second amended complaint ("proposed complaint") on June 20, 2018. Docs. 27; 28; 33; 33-1. Pursuant to the Court's June 12, 2018 Order, Coen responded to the Defendants' motion to dismiss on June 26, 2018. Docs 36; 37.

The Defendants have responded to Coen's motion for leave to file a revised second amended complaint. Doc. 39.

## II. MOTION FOR LEAVE TO FILE A REVISED SECOND AMENDED COMPLAINT

Prior to obtaining counsel, Coen filed a *pro se* motion for leave to file a second amended complaint. Doc. 26. After he obtained counsel, they filed a motion for leave to file a revised second amended complaint along with the proposed complaint.[1] Doc.

---

[1] Counsel for Coen states that the motion for leave to file a revised second amended complaint "supersedes" Coen's *pro se* motion for permission to file a second amended complaint. Doc. 33 at 3. Therefore, Coen's *pro se* motion at Doc. 26 is **DENIED AS MOOT**.

33.    Defendants' motion to dismiss the first amended complaint was pending when both of these motions were filed.  Doc. 14.  Should the Court grant the motion for leave to file a revised second amended complaint, the proposed complaint would supersede the first amended complaint.  *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) (holding that an amended complaint supersedes the original complaint);  *Schreane v. Middlebrooks*, 522 F. App'x 845, 847 (11th Cir. 2103) (quoting *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) (stating that "'an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading'").  Defendants' pending motion to dismiss the first amended complaint would, therefore, be rendered moot.  *Beasley v. City of Atlanta*, 2012 WL13012619, at *1 (N.D. Ga. 2012) (citations omitted) (finding that "the amended complaint renders moot the motion to dismiss because the motion seeks to dismiss a pleading that has been superseded");  *Gulf Coast Recycling, Inc. v. Johnson Controls, Inc.*, 2008 WL 434880, at *1 (M.D. Fla. 2008).  Thus, "[i]n the interest of justice and efficiency, the Court will commence by evaluating" Coen's motion for leave to file a revised second amended complaint.  *Carbiener v. Lender Processing Serv, Inc.*, 2014 WL 12616966, at *3 (M.D. Fla. 2014).

Coen seeks leave to amend his complaint to "clarify [his] individual claims against Defendants."  Doc. 33 at 2.  He also wants to add thirteen additional "Plaintiffs, who—together with Mr. Coen—seek to represent a class of deaf or hard of hearing people incarcerated in prisons and subject to supervision in Georgia."  Doc. 33 at 2.

These thirteen additional Plaintiffs are all deaf or hard of hearing individuals[2] who are currently or formerly in the custody of the Georgia Department of Corrections ("GDOC"), currently or formerly subjected to the authority of the Georgia Board of Pardons and Paroles ("GBOP"), and/or currently under the supervision of the Georgia Department of Community Supervision ("GDCS"). Doc. 33 at 8. Coen seeks to "eliminate Defendants who do not need to be parties to the case" and add other Defendants, including GDOC, GBOP, and GDCS. Doc. 33 at 2, 9.

Fed. R. Civ. P. 15 (a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should feely give leave when justice so requires." The Court has "'extensive discretion' to decide whether or not to allow a party to amend a complaint." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (quoting *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995)). Amendment is properly denied if it would prejudice the defendants, follows undue delay, or is futile. *Id.* (*citing Tech. Res. Serv., Inc. v. Dornier Med. Sys., Inc.*, 134 F.3d 1458, 1463-64 (11th Cir. 1998)). An amendment is futile if "'the complaint as amended is still subject to dismissal.'" *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255,1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)). "Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v.*

---

[2] The proposed complaint states that "the terms deaf and hard of hearing . . . refer to individuals with hearing levels or hearing loss that qualify as 'disabilities' under the [ADA] and the [RA]." Doc. 33-1 at 2, n.1. The Court uses the term "deaf" in this Order to refer to both deaf and hard of hearing individuals.

*Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, the Defendants oppose Coen's motion for leave to file the revised second amended complaint on the basis of futility alone. Doc. 39 at 5. They argue that the proposed complaint is futile for the same three reasons advanced in Defendants' motion to dismiss the first amended complaint: (1) Coen fails to allege sufficient facts to state a claim for relief; (2) Coen is still barred from recovering compensatory and punitive damages; and (3) Coen's claims for injunctive relief are moot. Doc. 39 at 3-9. Defendants also argue that joinder of unrelated Plaintiffs and Defendants should not be allowed under Fed. R. Civ. P. 20. Doc. 39 at 9-12. The Court addresses each of these arguments in turn.

A.      **Failure to state a claim upon which relief can be granted**

The Defendants argue that the Court should deny Coen's motion for leave to file the revised second amended complaint because it "fails to mention any of the individual Defendants by name; describe the specific conduct each Defendant allegedly engaged in; provide any details about when Plaintiff requested and was denied access to communication; or describe in any meaningful way the programs that he is allegedly being denied access to." Doc. 39 at 5.

The proposed complaint alleges the Defendants have violated Title II of the ADA, Section 504 of the RA, the Cruel and Unusual Punishments Clause of the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment by engaging the following conduct:

1.  <u>Alleged failure to provide equally effective communication</u>

The proposed complaint alleges the Defendants fail to provide equally effective communication to deaf persons within the prisons and to deaf probationers and parolees under state supervision. Doc. 33-1 at 19. Specifically, deaf individuals are not provided the necessary auxiliary aids and services to allow them to take part in, or adequately understand, the following: (1) the initial classification process, which occurs at the Georgia Diagnostic and Classification Prison (Doc. 33-1 at 21); (2) the initial prisoner orientation, which occurs at various state prisons (Doc. 33-1 at 22); (3) disciplinary proceedings (Doc. 33-1 at 22-25); (4) educational, vocational, and religious programs (Doc. 33-1 at 25-27); (5) meetings and conversations with in-custody counselors and staff (Doc. 33-1 at 27- 28); (6) employment (Doc. 33-1 at 29-30); (7) parole and re-entry planning (Doc. 33-1 at 30-31); (8) information communicated verbally to all inmates in prison (Doc. 33-1 at 32-33); (9) information conveyed in writing to all inmates in prison (Doc. 33-1 at 33); and (10) meetings with community supervision officers (Doc. 33-1 at 33-35).

As to Coen, the proposed complaint contains allegations related solely to number three—an inability to effectively participate in one disciplinary proceeding. Specifically, on an unspecified date in 2016 at CSP, unnamed Defendants subjected Coen to a disciplinary hearing. Coen's hands were cuffed behind his back during the hearing, and he was unable to communicate or understand the proceedings. "The handcuffs were on too tightly causing Mr. Coen pain and injury." Doc. 33-1 at 25. Coen suffered "bruising and cuts from the handcuffs . . . [and] still has scars on his wrists from the experience."

Doc. 33-1 at 45.  Coen spent a week in solitary confinement following the disciplinary hearing.  Doc. 33-1 at 25.

Coen's alleged inabilities to understand and participate in the disciplinary proceeding are potentially actionable under both the ADA and the RA.   Both statutes permit suits by disabled persons who face discrimination on account of their disabilities, or who are excluded from or denied the benefits of services because of their disabilities. Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the RA requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).  "[B]oth statutes are generally construed to impose the same legal requirements."  *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999)).  The ADA and RA extend to state prison inmates.  *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 212-13 (1998); *Onishea v. Hopper*, 171 F.3d 1289, 1296 (11th Cir. 1999). The proposed complaint alleges that GDOC's policies and procedures failed to provide for interpreters or other communication access during Coen's disciplinary process and called for indiscriminately handcuffing Coen, a deaf inmate, during the disciplinary hearing.  Doc. 33-1 at 23.  Coen alleges he was, therefore, "subjected to discrimination" and effectively "excluded from participation in" the entire disciplinary process.   42

U.S.C. § 12132; 29 U.S.C. § 794(a). As to Coen, these facts are enough to state potential claims under the ADA and RA.

The proposed complaint does not, however, allege a viable claim that Coen's due process rights under the Fourteenth Amendment were violated. Allegations suggesting denial of a fair disciplinary hearing do not, without more, state a due process claim. A prisoner seeking to state a claim for denial of due process must first allege facts to show that the denial of a fair hearing caused him to suffer an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Only after the Court finds that the prisoner suffered "an atypical and significant hardship," can it consider whether the hearing provided was adequate to provide due process. *Id.* Spending one week in solitary confinement is not a dramatic departure from the ordinary conditions of prison life. *Id.* at 486 (finding thirty days' confinement in segregation is not "an atypical and significant hardship"). Since Coen did not suffer "an atypical and significant hardship," there simply could be no due process violation. *Id.*

2. Failure to provide effective communication and to meet minimum constitutional requirements in medical, dental, and mental health care

The proposed complaint alleges generally that GDOC repeatedly fails to provide interpreters, Communication Access Realtime Translation ("CART"), or other aids and services at medical appointments. Doc. 33-1 at 35. Additionally, unnamed Defendants have failed to ensure deaf prisoners get appointments with hearing specialists to obtain hearing aids and cochlear implants. Doc. 33-1 at 35. While the proposed complaint provides details regarding how several prisoners and former prisoners have been

impacted by these alleged failures, there are no allegations specific to Coen.  Doc. 33-1 at 36-38.

   3.  <u>Unequal access to telecommunications</u>

   The proposed complaint alleges that GDOC provides prisoners who can hear regular access to telephones to communicate with family, friends, attorneys, and others outside of the prison.  Doc. 33-1 at 39.  But deaf inmates cannot use the telephones, and GDOC's teletypewriters ("TTY") are often broken or outdated.  Doc. 33-1 at 40.  While the proposed complaint provides details regarding how several prisoners and former prisoners have been impacted by the alleged inability to communicate with persons outside the prisons, there are no allegations specific to Coen.  Doc. 33-1 at 41.

   4.  <u>Unreasonable use of administrative isolation</u>

   According to the proposed complaint,  deaf "inmates are particularly affected by the sensory deprivations of solitary confinement, administrative segregation, protective custody, and other forms of prolonged isolation."  Doc. 33-1 at 43.  Unlike inmates who can hear, deaf inmates are unable to communicate or hear announcements during isolation.  As a result they routinely miss meals, showers, appointments, or medications while in isolation.  Doc. 33-1 at 44.  "While hearing inmates can shout to communicate to others in isolation or to get the attention of passing guards, deaf . . . inmates generally cannot share information through speech."  Doc. 33-1 at 43.  Also, inmates in segregation are allowed books to "mitigate the sensory and social isolations of segregation."   Doc. 33-1 at 44.  But deaf inmates cannot benefit from this policy or practice because most of them "do not understand written English."  Doc. 33-1 at 44.

Coen alleges he was "held in solitary confinement for a week." Doc. 33-1 at 44. During that time, he had no idea how long he would remain in confinement, "[h]e was completely cut off from all communication," and he suffered "significant mental distress and exacerbation of depression." Doc. 33-1 at 44.

Coen's allegations raise the potential claim that GDOC's administrative isolation policies and procedures have subjected him to discrimination in violation of Title II of the ADA and Section 504 of the RA. These facts, however, do not raise a claim that Coen suffered cruel and unusual punishment. "The Eighth Amendment proscribes punishment that shocks the conscience, offends society's evolving notions of decency or is grossly disproportionate to the offense." *Sheley v. Dugger*, 833 F.2d 1420, 1428 (11th Cir. 1987) (quoting *Hutto v. Finney*, 437 U.S. 678, 686 (1978)). Administrative segregation alone does not amount to cruel and unusual punishment. *Id.* at 1428-29. Also, "'the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.'" *Id.* at 1429 (citing *Hutto*, 437 U.S. at 686). Here, it does not appear that Coen was deprived of adequate food, sanitation, clothing, or any other necessity during his brief solitary confinement. Also, the confinement was for only one week. Coen has not stated a viable Eighth Amendment claim.

5. Use and placement of handcuffs without regard to communication

The proposed complaint alleges that many deaf inmates communicate primarily or exclusively with their hands and when "GDOC routinely handcuffs" these inmates behind their backs, they are unable to communicate. Doc. 33-1 at 44-45. Coen alleges that he was handcuffed at the disciplinary hearing that resulted in his one-week detention in administrative segregation. Doc. 33-1 at 25. He states he was unable to

communicate at the hearing.  Plus, the handcuffs were too tight, and "[h]e still has scars on his wrists from this experience."  Doc. 33-1 at 45.

Coen alleges he was unable to participate in the disciplinary hearing because GDOC's policy or "routine[]" procedure required that he be handcuffed behind his back. This states a potential claim under the ADA and the RA.  However, as explained above, Coen has not stated a viable Fourteenth Amendment due process claim in relation to the disciplinary hearing.  Also, to any extent that Coen seeks to allege cruel and unusual punishment under the Eighth Amendment, he has failed.  The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification . . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense."  *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citations omitted).  To establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component.  *Hudson v. McMillian*, 503 U.S. 1, 6-8 (1992).  He must show the alleged wrongdoing was objectively "'harmful enough'" to establish a constitutional violation, *Id.* at 8 (citations omitted), and that the defendant acted "maliciously and sadistically to cause harm," *Id.* at 7.  Even assuming that Coen could establish the objective element, he has alleged no facts to establish that any of the named Defendants acted "maliciously and sadistically to cause harm" when they tightened his handcuffs before this hearing.  *Id.*  In fact, he has not alleged who was responsible for placing the handcuffs too tightly on his wrists.

6.  <u>Failure to include deaf inmates in emergency planning</u>

The proposed complaint alleges that GDOC has emergency plans and equipment in place to warn and protect inmates in the event of an emergency.  Doc. 33-

1 at 46.  However, GDOC does not have adequate equipment in place to provide warnings to deaf inmates.  The proposed complaint provides no details of how Coen, or any other inmate, has been affected by these shortcomings.

7. Failure to maintain an accessible, adequate administrative exhaustion process

The proposed complaint alleges that the grievance process is inaccessible to deaf inmates.  Doc. 33-1 at 46.  Most deaf inmates are not literate in English and, therefore, cannot access the grievance process or file grievances.  Doc. 33-1 at 47.  In relation to Coen, the second amended complaint alleges that he "attempted to file a grievance about the injuries to his wrists and torso that he experienced from handcuffs being too tight," but the grievance counselor threw the grievance in the trash.  Doc. 33-1 at 48.

While the fact that Coen was unable, due to his disability, to participate in the grievance process potentially raises claims under the ADA and the RA, it does not raise any constitutional claims.  There is no constitutional right to participate in prison grievance procedures.  *See Wildberger v. Bracknell*, 869 F.2d 1467, 1467-68 (11th Cir. 1989); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001) (stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner. . ."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (stating that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state").

In conclusion, as far as Coen is concerned, the factual allegations in the proposed complaint do not state any viable constitutional claims.  The proposed complaint, however, alleges enough facts to raise narrow claims under the ADA and

RA.   Namely, that Coen, during his incarceration at CSP, was either discriminated against, effectively excluded from, or denied the benefits of, the disciplinary process,[3] the grievance process, and various components of administrative segregation because of his disability.

## B.   Compensatory and punitive damages

Coen does not seek damages under 42 U.S.C. § 1983.   Doc. 42 at 5-6.   Instead, he seeks compensatory damages under the ADA and the RA against GDOC.   Doc. 33-1 at 76, 78.   Under the Prison Litigation Reform Act ("PLRA"), prisoners are barred from recovering compensatory or punitive damages unless they have suffered more than a *de minimis* physical injury.[4]   Doc. 39 at 6 (citing *Brooks v. Powell*, 800 F.3d 1295 (11th Cir. 2015)).   Defendants argue that Coen alleged only a *de minimis* physical injury in his first amended complaint and has done so again in the proposed complaint.

The PLRA provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."   42 U.S.C. § 1997e(e).   The only physical injury Coen allegedly sustained was to his wrists and torso when, on one occasion, his hands were cuffed behind his back before and during a disciplinary hearing.   Doc. 33-1 at 25.   The proposed complaint states:   "The handcuffs were on too tightly, causing Mr. Coen pain and injury" (Doc. 33-1 at 25); "He experienced bruising and cuts from the handcuffs" (Doc. 33-1 at 45); and "[h]e still has

---

[3] Included in this claim is Coen's allegation that he was unreasonably handcuffed behind his back on the way to, and during, this disciplinary hearing and, therefore, could not communicate or defend himself. Doc. 33-1 at 45.

[4] If Coen's injuries are *de minimis*, he could recover only nominal damages of $1.00.  *Brooks*, 800 F.3d at 1308.

scars on his wrists from this experience" (Doc. 33-1 at 45). It, therefore, appears that Coen's skin was cut and damaged to the extent that he still bears scars. Doc. 42 at 6.

While the Court agrees with Defendants that bruises, welts, scrapes, and marks are *de minimis*, it appears that Coen's injuries **might** have been more extensive. He states that he has permanent scars as a result of the handcuffs being placed too tightly on his wrists. *Compare Johnson v. Georgia*, 2007 WL 601619, at *3-*4 (M.D. Ga. 2007) (citations omitted) (stating that a physical injury such as a "'sore muscle, an aching back, a scratch, an abrasion, a bruise[,]'" for which people do not ordinarily seek medical care, are considered *de minimis* injuries), *with Owens v. Hart*, 2016 WL 450297, at *10 (M.D. Ga. 2016) (citations omitted) (declining to find that injuries were *de minimis* when plaintiff suffered scrapes, abrasions, significant swelling, and a permanent knot on his head). The Court agrees with Coen that the question whether he experienced more than a *de minimis* physical injury should not be decided in this preliminary context. Doc. 42 at 6-7. Instead, it can be decided after the parties have had an opportunity to conduct discovery to verify the extent of Coen's injuries.

## C.   Injunctive relief

When Coen filed his original and first amended complaint, he was incarcerated at CSP. Docs. 1; 8. He was released from confinement on February 18, 2017. Doc. 10. Claims for declaratory and injunctive relief are mooted by a prisoner's release from prison. *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (per curiam). Coen raises two arguments in an effort to avoid this well-established rule. First, Coen states that he still has standing to seek injunctive relief to remedy the unlawful violations he is experiencing while on probation under state supervision. Second, he argues that his

risk of reincarceration is so great, he should not be foreclosed from obtaining injunctive and declaratory relief against GDOC and its officials.  Doc. 42 at 7-9.

The proposed complaint alleges that Defendants deny deaf probationers and parolees "equally effective communication in meetings with their parole and probation officers, local sheriffs, and in reviewing the conditions of parole or probation."  Doc. 33-1 at 3.  As a result, these probationers and parolees often do not know what is required of them and end up violating the conditions of their release and returning to prison. Docs. 33-1 at 3; 37.  The proposed complaint contains no allegations specific to Coen. Yet, in an affidavit submitted in response to Defendants' motion to dismiss, Coen states his probation office, which is in Glynn County, does not provide ASL interpreters, and he, therefore, does "not fully understand the conditions of [his] probation.  But [he] thinks that [his] probation officer can send [him] back to prison if [he does] not follow all the rules of probation."  Doc. 37 at 1.   The second amended complaint seeks to add two additional Plaintiffs who are currently "subject to state supervision under GDCS" (Jeremy Woody and Carlos Herrera) (Doc. 33-1 at 9, 11), and two Defendants who are responsible for supervising probationers and parolees across the state (GDCS and Michael Nail, Commissioner of GDCS) (Doc. 33-1 at 12, 14).

While Fed. R. Civ. P. 15 states that the Court "should feely give leave" to amend, the Court finds that claims arising during probation should be brought in a separate action.  The Federal Rules of Civil Procedure permit the joinder of plaintiffs and defendants when a "right to relief . . . aris[es] out of the same transaction, occurrence, or series of transactions or occurrences," and involves a "question of law or fact [that is] common to all . . . ."  Fed. R. Civ. P. 20.  As the Court explained in a recent case,

"[w]hile Plaintff's probation allegations perhaps raise common issues of RA and ADA law, the factual dissimilarities between the highly secured prison environment and the less secure probation environment are too pronounced to satisfy the 'series of transactions or occurrences' inquiry." *Woody v. Perry*, 2018 WL 3060084, at *2 (M.D. Ga. 2018), *report and recommendation adopted*, 2018 WL 3059608 (M.D. Ga. 2018). Stated another way, the post-incarceration claims asserted against GDCS and Nail do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the conditions of confinement claims against GDOC and its officials. Fed. R. Civ. P. 20(a)(2)(A). The factual issues surrounding the alleged failure to provide effective communication inside Georgia's prisons bear little relation to the factual issues surrounding the alleged failure to provide non-prisoners with effective communication. Coen, Woody, and Herrera are not prejudiced by this determination. They may file separate civil action raising these claims and seeking damages as well as injunctive and declaratory relief.

Next, Coen argues that his risk of returning to prison is so great that he should not be foreclosed from obtaining injunctive and declaratory relief against GDOC and its officials. Doc. 42 at 8-9. Defendants counter that Coen has made no factual showing that he is in danger of violating his probation. Instead, his argument that he is in danger of being reincarcerated is "nothing but pure speculation." Doc. 39 at 8. In reply, Coen points to the recidivism rate in Georgia:

> The state's recidivism rate—the proportion of individuals reconvicted within three years of release—is about 30 percent. In 2015, nearly 37 percent of people exiting probation were incarcerated, revoked, or had another unsuccessful discharge. The same year, 22 percent of people exiting parole were re-incarcerated. More than two out of three people admitted to prison were sent there for probation and parole revocations.

As of July 2018, 44 percent of the state's prison population has been incarcerated in Georgia at least once before.

Doc. 42 at 8 (footnotes and citations omitted).

Coen's argument proves too much. Statistically, every probationer and parolee face a significant risk of returning to prison. Therefore, using Coen's logic, every probationer and parolee should be allowed to enjoin GDOC's future behavior. This, however, is not the law. Because Coen is no longer incarcerated, he simply does not have a personal interest in enjoining GDOC's future behavior. *McKinnon v. Talladega Cty, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (rejecting plaintiff's argument that claim for declaratory and injunctive relief remained available because plaintiff, who had been transferred from the jail about which he complained, might be returned to the same jail at some future date); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (holding "when an inmate's claim for prospective injunctive relief regarding conditions of confinement becomes moot due to the inmate-plaintiff's release from confinement, the inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow 'capable of repetition, yet evading review' exception to the mootness doctrine"); *Schauer v. Fogg*, 885 F. Supp. 28, 31 (N.D.N.Y. 1995) (finding that by parolee's logic—request for injunctive relief not moot because he could be re-incarcerated if he violated parole—"anyone would have standing to sue for an injunction against prison conditions because they might someday be incarcerated").

As for any re-incarceration risk specific to Coen, all he states is that he does "not fully understand the conditions of [his] probation." Doc. 37 at 1. The same could probably be said for many probationers or parolees. Given the "pervasive cycle of incarceration to parole/probation to re-incarceration" that Coen details in his brief, it

seems that many probationers and parolees fail to understand, or at least adhere to, the conditions of their supervised release. Doc. 42 at 8. Coen has successfully managed his probation for approximately sixteen months. Doc. 10. His argument that he might one day be re-incarcerated is speculative. Doc. 37 at 1; *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (stating plaintiff's argument that he might one day be transferred back to county jail is "too speculative"). Coen can no longer benefit from the injunctive relief he requests from GDOC and its officials. Thus, his claims for injunctive and declaratory relief are moot.

**D.      Joinder under Fed. R. Civ. P. 20**

Plaintiffs may join in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B). The Court "has broad discretion to join parties or not." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002) (per curiam) (citations omitted). "Whether multiple claims arise from the same transaction, occurrence, or series of transactions or occurrences depends on whether a 'logical relationship' exists between the claims." *Rhodes v. Target Corp.*, 313 F.R.D. 656, 659 (M.D. Fla. 2016) (quoting *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003)). For there to be a "logical relationship," the claims must "arise from common operative facts." *Barber v. America's Wholesale Lender*, 289 F.R.D. 364, 367 (M.D. Fla. 2013) (citations omitted). Even in situations where joinder is permissible, it is not mandated. *Rhodes*, 313 F.R.D. at 659. "Thus, 'even if the technical requirements

for joinder are met, the Court has discretion to deny joinder if it determines that the addition of a party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense[,] or delay.'" *Id.* (citations omitted).

1.  Potential Plaintiffs who are currently incarcerated

Coen argues that joinder of thirteen additional Plaintiffs is appropriate because all of the potential Plaintiffs are deaf or hard of hearing and all are either currently in GDOC custody and subject to the pardon and parole power of GBOP, or no longer in custody but still subject to GDCS supervision.  Doc. 33 at 7-8.  He states that "[a]ll Plaintiffs' claims are based on conduct, policies, procedures, and failures by state officials against deaf and hard-of-hearing people in the custody or supervision of the State of Georgia."  Doc. 33 at 8.  Coen claims the second prong of Fed. R. Civ. P. 20(a)(1) is "easily met" because "[n]umerous questions of law or fact common to all Plaintiffs will arise in the action."  Doc. 33 at 8.

As stated previously, when Coen filed his original complaint in this action he was a prisoner at CSP and was, therefore, subject to the Prison Litigation Reform Act ("PLRA").  28 U.S.C. § 1915; Docs. 1; 8.  Coen moved to proceed *in forma pauperis*, but the Court denied the motion because he had enough money in his prisoner account to pay the filing fee.  Docs. 4; 5.  Ten or eleven[5] of the Plaintiffs Coen seeks to add are currently incarcerated and are, therefore, subject to the PLRA.  Doc. 33 at 7-12.

Defendant argues that joinder is prohibited by *Hubbard v. Haley*, 262 F.3d 1194, 1197 (11th Cir. 2001).  In *Hubbard*, eighteen unrepresented prisoners brought a 42

---

[5] John Doe is one of Coen's potential Plaintiffs.  Doc. 33 at 8.  He states that "Doe is in the custody or under the supervision of the Defendants."  Doc. 33 at 8.  The Court, therefore, does not know if Doe is incarcerated and subject to the PLRA or not.

U.S.C. § 1983 action *in forma pauperis*, alleging inadequate medical care and diet at the prison in which they were incarcerated. The Eleventh Circuit held that "the PLRA clearly and unambiguously requires that 'if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee.'" *Id.* at 1197. Thus, multiple prisoners may not join in one action and share the filing fee. *Id.* at 1197-98. To the extent that Fed. R. Civ. P. 20 conflicts with the filing-fee requirement of the PLRA, "the statute repeals the Rule." *Id.* at 1198 (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1489 (11th Cir. 1997)).

Coen states that, unlike the situation in *Hubbard*, he is currently represented by counsel, and he paid the filing fee. Some courts have determined that prisoners may not join in one action even if they are represented, and even if each one pays the required filing fee. *Garcia v. McNeil*, 2010 WL 4823370, at *2 (N.D. Fla. 2010), *report and recommendation adopted*, 2010 WL 4818067 (N.D. Fla. 2010) (citing *Hubbard*, 262 F.3d at 1198) (holding that prisoners who are represented by counsel and who have non-frivolous claims cannot join under Rule 20 even if each pays the filing fee). However, this Court determined in a previous case that additional prisoners could join an action when they were represented by counsel and the original plaintiff had paid the filing fee. *Mann v. Donald*, 2009 WL 811574, at * 9 (M.D. Ga. 2009), *report and recommendation adopted*, 2009 WL 811577 (M.D. Ga. 2009). As Coen points out, if Defendants' argument prevailed, no group of represented prisoners could ever bring a class action, and this is not the law. Doc. 42 at 11 n.12 (citing *Braggs v. Dunn*, 317 F.R.D. 634, 673 (M.D. Ala. 2016); *Henderson v. Thomas*, 289 F.R.D. 506, 512 (M.D. Ala. 2012); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1387 (N.D. Ga. 1997)).

Even if the PLRA does not prohibit joinder in this case, factors weigh in favor of denying Coen's motion to join the ten or eleven Plaintiffs who are currently incarcerated. Most notably, those who are currently incarcerated have an interest in enjoining GDOC's future behavior; Coen does not. The proposed complaint requests the Court to order the Defendants to modify their policies, practices, and procedures to comply with the ADA, the RA, and the Eighth and Fourteenth Amendments. Doc. 33-1 at 73-81. The substantial and complex issues related to how the Defendants could and should modify their policies, practices, and procedures simply are not present in Coen's case. *See Swan*, 293 F.3d at 1253 (finding plaintiff who wanted to join action could not satisfy the requirement of Fed. R. Civ. P. 20(a) because he did not share the original plaintiff's right to injunctive relief). The claims and potential relief that exist in Coen's case are narrow: Coen only has claims for money damages under the ADA and the RA involving CSP's grievance process, one disciplinary hearing, and one stay in administrative segregation. It simply would not serve the interests of justice to so greatly expand a case that has already been pending in this Court for two years. *Barber*, 289 F.R.D. at 368 (citations omitted) (stating that "considerations of judicial economy, case management, prejudice to parties, and fundamental fairness" may caution against joinder). The incarcerated Plaintiffs will not be prejudiced by this ruling. They can file their own suit or suits in which they may seek to enjoin GDOC's future behavior.

2. Potential Plaintiffs who are not currently incarcerated

The other potential Plaintiffs (Woody and Herrera) are, like Coen, currently "subject to state supervision under GDCS." Doc. 33-1 at 9, 11. Woody currently has an

action pending in this Court in which he is litigating ADA and RA claims against Warden Clinton Perry and former Warden Walter Berry in their official capacities for violations that allegedly occurred at CSP. *See Woody v. Bryson*, Civil Action No. 5:16-CV-467 (M.D. Ga. 2016). Woody's suit against these two individuals in their official capacity is, in effect, a suit against GDOC. *Woody v. Bryson*, Civil Action No. 5:16-CV-467, Docs. 25 at 14; 29 at 2-3 (M. D. Ga. 2016) (citations omitted). The Court, therefore, agrees with Defendants that Woody cannot "'maintain two actions on the same subject in the same court, against the same defendant at the same time.'" Doc. 39 at 13 (citations omitted).

Coen argues that Woody's attempt to join this suit is his way of adhering to the Court's previous ruling in his lawsuit. Doc. 42 at 11. In that case, the Court denied Woody's attempt to add his post-incarceration injunctive relief claims to his ongoing ADA and RA claims for damages stemming from his confinement at CSP. *Woody v. Bryson*, Civil Action No. 5:16-CV-467, Docs. 25 at 14; 29 at 2-3 (M. D. Ga. 2016). The Court instructed Woody to file a separate case to address the claims related to his probation. *Id.* Likewise, in this Order, the Court has instructed Coen that he may not join his probation-related claims to his prison-related claims. Claims arising from a lack of effective communication during probation or parole simply do not "arise out of the same transaction or occurrence, or series of transactions or occurrences" as claims alleging a lack of adequate communication during incarceration. Although all of the claims "may raise similar legal issues [under the ADA or the RA], they are not logically related because they do not arise from common operative facts." *Barber*, 289 F.R.D. at

367.  Thus, Coen, Woody, and Herrera cannot raise probation-related claims in this action.

This leaves only Herrera and his prison-related claims, which are:

(1)  Herrera needed to take a specific risk-reduction class before he could be considered for parole.  Doc. 33-1 at 26.  But Augusta State Medical Prison ("ASMP") repeatedly rejected Herrera from the risk-reduction class because ASMP refused to provide interpreters.  Doc. 33-1 at 26.  Herrera's inability to take the class was a contributing factor to his denial of parole in July 2016.  Doc. 33-1 at 26.  Other contributing factors included GBOP's "failure to ensure effective communication access."  Doc. 33-1 at 27.

(2)  Herrera was discriminated against on the basis of his disability when he worked in the kitchen at ASMP.  Doc. 33-1 at 29.

(3)  In April 2018, while incarcerated at CSP, Herrera failed to hear guards announce inspection and was forced to wash windows as punishment for failing to prepare for inspection.  Doc. 33-1 at 32.

(4)  Herrera, who has high blood pressure, had no way to communicate with medical staff and, therefore, received no medical care for "shortness of breath" in March 2018 at CSP.  Doc. 33-1 at 37.

(5)  Unnamed "prison officials at ASMP" retaliated against the deaf inmates, including Herrera, for filing grievances and transferred them to CSP in February, 2018.  Doc. 33-1 at 49.

Herrera, like Coen, seeks injunctive and declaratory relief under 42 U.S.C. § 1983.  Doc. 33-1 at 79, 81.  He seeks injunctive and declaratory relief and damages

under Title II of the ADA and Section 504 of the RA.  Doc. 33-1 at 76, 78.  Just as with

Coen, Herrera is no longer incarcerated and is not entitled to injunctive or declaratory

relief.   Herrera, therefore, has failed to request any available relief under § 1983.  Also,

the factual allegations in the proposed complaint fail to set forth any viable constitutional

claims.[6]  But, as with Coen, the facts in the proposed complaint do raise potential claims

under Title II of the ADA and Section 504 of the RA.  Given the similarities to Coen, the

Court finds that Herrera meets the requirements in Fed. R. Civ. P. 20(a)(1)(A)-(B).

Herrera may join his ADA and RA claims for damages that arose during incarceration at

ASMP and CSP in this action.  Herrera, like Coen and Woody, will need to file a

separate action to address any probation or parole-related claims.

    3.  <u>Defendants</u>

Coen seeks to "join twelve Defendants in this case, three institutional

Defendants—GDOC, GDCS, and GBOP—and nine officials from those institutions who

are sued in their official capacities."  Doc. 33 at 9.  Coen states that the individual

Defendants are those with "decision-making authority."  Doc. 33 at 9 n.2.  He alleges

that "GDOC (as well as GDCS and GBOP) [are] public entity defendants for his ADA

---

[6] Herrera's factual allegations do not raise Eighth or Fourteenth Amendment violations.  There is no constitutional right to parole or constitutional right to obtain or keep a certain job in prison.  *Sultenfuss v. Snow*, 35 F.3d 1494, 1495 (11th Cir. 1994) (holding Georgia's parole system creates no liberty interest in parole protected by the Due Process Clause); *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986) (holding that "job assignment and reassignment remain the prerogative of the prison administrators).  Being made to wash windows does not amount to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  Allegations that unnamed prison staff failed to treat his shortness of breath, without more, fail to show a serious medical need or that any particular defendant acted with deliberate indifference to that need.  *Harper v. Lawrence Cty*, 592 F.3d 1227, 1234 (11th Cir. 2010).  While the factual allegations potentially show a retaliatory transfer by unnamed officials at ASMP, the proposed complaint does not contain a count for First Amendment retaliation.  Doc. 33-1.  Additionally, the only relief Herrera seeks under 42 U.S.C. § 1983 is injunctive and declaratory relief.  Even if he stated a constitutional claim, he, like Coen, would not be entitled to this relief because he is no longer in prison.

and [RA] claims." Doc. 36 at 9. He seeks to name GDOC officials "for injunctive relief pursuant to 42 U.S.C. § 1983." Doc. 36 at 9.

As with plaintiffs, defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B). The Court has discretion when it comes to joinder of defendants. *Malibu Media, LLC v. Doe.*, 923 F. Supp. 2d 1339, 1342 (M.D. Fla. 2013).

As explained above, the proposed complaint raises potential claims for damages under Title II of the ADA and Section 504 of the RA related to Coen's and Herrera's alleged inabilities as deaf inmates to communicate in prison. "Only public entities are liable for violations of Title II of the ADA." *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010) (citations omitted). "State prisons are public entities for purposes of the ADA." *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (quoting *Yeskey*, 524 U.S.at 210). Similarly, the requirements of Section 504 of the RA apply to "any program or activity receiving Federal financial assistance." 29 U.S.C.§ 794(a). The term "program or activity" means the operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government[.]" 29 U.S.C. § 794(b). This language suggests that RA claims should be brought against the public entity as well. Individuals are not subject to personal liability under either the ADA or the RA.[7] *See Miller v. King*, 384 F.3d 1248, 1276-77 (11th Cir. 2004), *vacated and superseded on other grounds by* 449 F.3d 1149 (11th Cir. 2006).

---

[7] The only exception is that individuals may be personally liable for violations of ADA's anti-retaliation provision. 42 U.S.C.§ 12203(a); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1166-67 (11th Cir.

The Court has found that claims involving an inability to communicate during probation or parole do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as claims related to an inability to communicate during incarceration. Fed. R. Civ. P. 20(a)(2)(B). Thus, GDCS cannot be joined in this action. However, GDOC and GBOP may be added as Defendants. *See Thompson v. Davis*, 295 F.3d 890, 898 (9th Cir. 2002) (citations omitted) (finding that "[l]ike state prisons, state parole boards 'fall squarely within the statutory definition of "public entity," which includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government."'").

The ADA and RA claims for damages against the individual Defendants that Plaintiff seeks to add in their official capacities are "indistinguishable from [P]laintiff's claims against" GDOC and GBOP. *Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007). Because the Court is adding GDOC and GBOP as Defendants, claims for damages against the individual Defendants in their official capacity are "redundant." *Id.* at 1362-63. To the extent that Coen seeks to add the individual Defendants because he seeks injunctive relief under § 1983 against these individuals, the Court has determined that Coen and Herrera have not raised any viable constitutional claims and that Coen's and Herrera's requests for injunctive relief were mooted by their release from prison.

---

2003). It does not appear that Coen seeks to raise any ADA claims against individual Defendants in their personal capacity. Doc. 36 at 8-9. While the proposed complaint alleges that Herrera was retaliated against for filing grievances, it does not identify the Defendant or Defendants who retaliated against him. Also, it does not identify one grievance that Herrera filed. Thus, the proposed complaint has not identified any specific instances of retaliation against Herrera. As such, the proposed complaint fails to state a claim under the ADA against any individual Defendant in his or her personal capacity.

Accordingly, the Court sees no need to add the individual Defendants in any capacity. The only Defendants in this action going forward are GDOC and GBOP.

## III. MOTION TO DISMISS

Defendants' motion to dismiss Coen's first amended complaint was pending when he filed his motion for leave to file a revised second amended complaint. Docs. 14; 33. The Court grants in part and denies in part Coen's motion for leave to file a revised second amended complaint. The proposed complaint, therefore, supersedes the first amended complaint, and Defendants' motion to dismiss the first amended complaint is moot. *Fritz*, 676 F.2d at 1358; *Beasley*, 2012 WL13012619, at *1. The motion to dismiss is, therefore, **DENIED AS MOOT**. Should Defendants think it appropriate, they may file a motion to dismiss the revised second amended complaint.

## IV. DISCOVERY

Plaintiff moves to vacate the Magistrate Judge's order that stayed discovery in this case pending the outcome of Defendants' motion to dismiss. Doc. 44. Defendants' motion to dismiss has now been resolved. The Court **GRANTS** Plaintiff's motion and reopens discovery for a period of ninety days from the date of this Order.

## V. CONCLUSION

Coen's motion for leave to amend the revised second amended complaint is **GRANTED IN PART AND DENIED IN PART**. Coen's motion for leave to file a revised second amended complaint is **GRANTED** to the extent he seeks (1) to clarify his factual allegations relating to his claims for damages under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"); (2) to withdraw any claims not alleged in the proposed revised second amended complaint, including

any claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (3) to add Carlos Herrera as a Plaintiff and add Herrera's ADA and RA claims for damages only; and (4) to delete unnecessary Defendants named in the original and first amended complaint and add the Georgia Department of Corrections ("GDOC") and the Georgia Board of Pardons and Paroles ("GBOP") as the only named Defendants. Coen's motion for leave to amend the revised second amended complaint is **DENIED** to the extent he seeks: (1) to clarify his Fourteenth and Eighth Amendment claims; (2) to add or clarify his requests for injunctive and declaratory relief; (3) to add claims related to his (or any other Plaintiffs') post-incarceration probation or parole; (4) to add additional Plaintiffs other than Herrera; (5) to add any claims for Herrera other than those brought under the ADA and RA; and (6) to add any individual Defendants.

Plaintiff is **ORDERED** to file a recast second amended complaint that complies with the rulings in this Order.

The Court **DENIES as MOOT** both Defendants' motion to dismiss Coen's first amended complaint and Coen's *pro se* motion for leave to file a second amended complaint.  Docs. 14; 26.

The Court **GRANTS** Plaintiff's motion to lift the stay of discovery and the parties have ninety days from the date of this order to complete discovery.

**SO ORDERED**, this 13th September, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
